UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHARON SHUMPERT,

        Plaintiff,

  v.

HEALTHPOINT CENTERS OF KING COUNTY,

        Defendant.

C18-1680 TSZ

ORDER

THIS MATTER comes before the Court on Defendant HealthPoint's Motion for Summary Judgment, docket no. 20, and Motion to Strike, docket no. 28. Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following order.

**Background**

HealthPoint is a network of non-profit health centers with seventeen locations in King County, Washington. Yohalem Decl., docket no. 24 at ¶ 3. In 2017, 92% of HealthPoint patients served had incomes at or below 200% of the federal poverty line. *Id.* at ¶ 4. To operate, HealthPoint relies in part on a grant writer who is responsible for managing a portfolio of over $6 million in grants per year. *Id.* at ¶ 5; Yohalem Decl., docket no 24-1, Ex. B at 4. The essential duties and responsibilities of the grant writer position include maintaining good attendance, punctuality, and working fully scheduled

ORDER - 1

shifts. *Id.* The job description for the grant writer position states that an individual "must" be able to perform each essential duty satisfactorily and that reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions. *Id.* HealthPoint hired Sharon Shumpert, an experienced grant writer, for the position, and she began working in June 2016. Yohalem Decl., docket no. 24 at ¶¶ 6-7.

Shumpert's manager soon reported that she had difficulty multitasking and communicating with others. *Id.* at ¶ 7. Her manager redistributed Shumpert's workload by taking some of it herself and by outsourcing work to contractors. *Id.* at ¶¶ 7, 13. Shumpert turned in incomplete, inaccurate, and late grant proposals. *Id.* at ¶ 8. In September 2017, HealthPoint placed Shumpert on a performance improvement plan. *Id.*

Shumpert had been previously diagnosed with Meniere's disease and diabetes. Yohalem Decl., docket no. 24-1, Ex. E at 14. She suffered from debilitating migraine headaches three to four times per week lasting up to 24 hours. Yohalem Decl., docket no. 24-1, Ex. H at 24; Yohalem Decl., docket no. 24-1, Ex. L at 36. Shumpert's physician recommended that she work a reduced hours schedule starting December 2017 and running until August 2018. Yohalem Decl., docket no. 24 at ¶ 12; Yohalem Decl., docket no. 24-1, Ex. S at 65. HealthPoint allowed Shumpert to work a modified schedule which included working part-time and during the morning, when Shumpert stated it was easier for her to work. Yohalem Decl., docket no. 24 at ¶ 11. Shumpert also received leave pursuant to the American with Disabilities Act and the Family and Medical Leave Act leave. *Id.* at ¶¶ 9-10.

ORDER - 2

Eventually, Shumpert began to call in sick for weeks at a time. *Id.* at ¶¶ 14-15; Yohalem Decl., docket no. 24-1, Ex. V. HealthPoint terminated Shumpert effective January 16, 2018 because HealthPoint could no longer accommodate Shumpert's work restrictions. Yohalem Decl., docket no. 24 at ¶ 16.

In November 2018, Shumpert sued HealthPoint, alleging that Shumpert's termination violated the anti-retaliation provision of the False Claims Act ("FCA"), 31 U.S.C. § 3729.[1] Compl., docket no. 1 at ¶¶ 35-40. Specifically, Shumpert alleged that throughout her employment, HealthPoint asked her to alter financial and data reports to receive more federal grant money, which it hid in a secret bank account. *Id.* ¶¶ 10-11, 27.

Throughout this case, Shumpert has failed to participate in discovery. While Shumpert's counsel answered HealthPoint's interrogatories and requests for admission, the responses are not signed by Shumpert. Riensche Decl., docket no. 21 at ¶ 3. Shumpert also repeatedly failed to respond to HealthPoint's attempts to schedule her deposition. *Id.* at ¶¶ 4-7. When neither HealthPoint nor Shumpert's own counsel could get in contact with Shumpert, the parties set Shumpert's deposition for the discovery cutoff deadline. *Id.* Shumpert ultimately failed to attend her deposition. *Id.* at ¶¶ 8-9. As of the date the Motion for Summary Judgment was filed, Shumpert had not explained her failure to attend her deposition. *Id.* at ¶ 9.

---

[1] Shumpert also brought claims for wrongful termination and unpaid wages. Shumpert has since conceded those claims. Plaintiff's Opposition, docket no. 26 at 1. Accordingly, the claims for wrongful termination and unpaid wages are DISMISSED.

HealthPoint now moves for summary judgment, contending that Shumpert has failed to produce admissible evidence in support of her remaining FCA retaliation claim and that even if the Court considered Shumpert's inadmissible evidence, Shumpert fails to create a question of material fact.

**Discussion**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Beard v. Banks*, 548 U.S. 521, 529 (2006) ("Rule 56(c) 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

**I. Shumpert's Evidence in Opposition to Summary Judgment**

In opposition to a summary judgment motion, a party asserting that a fact is genuinely disputed must cite to admissible evidence. Fed. R. Civ. P. 56(c). A party may

cite to materials in the record, including admissions and interrogatory answers. *Id.* Any affidavit used to support a motion or opposition must be made on personal knowledge and show that the affiant is competent to testify on the matters stated. *Id.* If a party fails to properly address another party's assertion of fact, the court may consider the fact undisputed and grant summary judgment if the motion otherwise shows that the movant is entitled to it. Fed. R. Civ. P. 56(e).

In opposition to HealthPoint's Motion, Shumpert proffers no admissible evidence of any genuinely disputed fact. Shumpert submits answers to HealthPoint's interrogatories and requests for admission, both signed only by her attorney. Fulton Decl., docket no. 27, Exs. A & B. Shumpert purports to authenticate these discovery responses with an affidavit, which is also signed only by her attorney. Fulton Decl., docket no. 27.

Pursuant to Federal Rule of Civil Procedure 33(b)(3) & (5), interrogatories must be given under oath and signed by the person answering them. The purpose of this requirement is to ensure that the interrogatory answers are in a form that is admissible at summary judgment and trial. *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2012 WL 12845643, at *2 (W.D. Wash. Apr. 4, 2012); *United States ex rel. Dahlstrom v. Sauk-Suiattle Indian Tribe of Washington*, 2019 WL 4082944, at *13 (W.D. Wash. Aug. 29, 2019). Shumpert failed to sign or verify her interrogatory responses. She cannot rely on her attorney's declaration to verify her discovery responses. Any declaration used to oppose a motion must be based on personal knowledge and show that the declarant is competent to testify on the matters stated therein. Fed. R. Civ. P. 56(c)(4). Shumpert's

ORDER - 5

attorney does not have personal knowledge of the assertions of fact contained within Shumpert's discovery responses. The interrogatory responses are inadmissible evidence and are therefore insufficient to raise a genuine dispute of material fact in opposition to HealthPoint's Motion.

Shumpert's answers to the requests for admissions suffer from the same deficiency because they are signed only by her attorney. The Court is also unable to discern whether Shumpert's responses are based on Shumpert's personal knowledge or her attorney's secondhand knowledge. *Compare, e.g.*, Fulton Decl., docket no. 27, Ex. B, Response to Request for Admission No. 2, "I worked fulltime either on the job or from home" *with* Response to Request for Admission No. 6, "No. Ms. Shumpert has no knowledge of this recommendation." Absent an applicable exception, Shumpert's attorney's impressions are statements offered in evidence to prove the truth of the matter asserted and thus constitute inadmissible hearsay. Finding no applicable exception, the responses to HealthPoint's requests are inadmissible evidence insufficient to raise a genuine dispute of material fact in opposition to HealthPoint's Motion.

Because Shumpert fails to properly address HealthPoint's asserted facts, the Court considers the facts asserted in HealthPoint's Motion undisputed. *See* Fed. R. Civ. P. 56(e)(2).[2]

---

[2] Even if Shumpert's discovery responses were properly before the Court, the Court declines to consider them as a sanction for failing to attend her properly noted deposition. *See* Fed. R. Civ. P. 37(d)(3). Shumpert's failure to attend her own deposition and otherwise participate in discovery prejudices HealthPoint by preventing HealthPoint from developing a factual record in defense of Shumpert's claims. The Court therefore GRANTS HealthPoint's Motion to Strike the Fulton Declaration.

## II. FCA Retaliation Claim

To assert a claim of retaliation under the FCA, Shumpert must show that: (1) she engaged in activity protected under the statute; (2) the employer knew she engaged in protected activity; and (3) the employer discriminated against plaintiff because she engaged in protected activity. *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002). Shumpert has produced no admissible evidence of any of the three elements.

Shumpert fails to show that she reasonably believed that HealthPoint "was possibly committing fraud against the government, and she investigated the possible fraud." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). This element requires a showing that both Shumpert and a reasonable employee in similar circumstances believed that HealthPoint was possibly committing fraud against the government. *Moore*, 275 F.3d at 845. Shumpert presents no evidence to establish that she undertook an investigation of the alleged fraud or that a reasonable employee in her position would have shared her belief that HealthPoint was committing fraud. Shumpert also fails to present any evidence that HealthPoint was aware of any investigation she undertook.

Finally, Shumpert fails to show that HealthPoint discriminated against her because she engaged in protected activity. *Id.* This element requires a showing that "but for" the impermissible retaliation by her employer, the termination would not have occurred. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Even considering Shumpert's proffered evidence, Shumpert fails to show that there is an issue of fact

regarding whether Shumpert would not have been dismissed but for HealthPoint's retaliation.

HealthPoint contends that Shumpert was not terminated because she engaged in protected activity but rather due to her poor work performance and attendance.[3] In support of this contention, HealthPoint cites her termination paperwork, which states that HealthPoint terminated Shumpert because it could no longer provide accommodation under the ADA (Yohalem Decl., docket no. 24-1, Ex. W at 81), text messages from Shumpert calling in sick for weeks (Yohalem Decl., docket no. 24-1, Ex. V), and sworn affidavits from Shumpert's manager stating that Shumpert's work was late and incomplete (Yohalem Decl., docket no. 24 at ¶¶ 7-8). HealthPoint also contends that it was required to hire outside contractors to work on grant applications that Shumpert could not complete because she was not working full time. Yohalem Decl., docket no. 24 at ¶¶ 7, 13. Shumpert's position required good attendance and the ability to work full time as an essential requirement. Yohalem Decl., docket no. 24-1, Ex. B at 4. Shumpert does not dispute the requirements of the grant writer position or her attendance record. Rather, Shumpert contends that she was capable of working full time. Plaintiff's Opposition, docket no. 26 at 2. Even if Shumpert was capable of working full time, however, it is clear from the undisputed facts that she did not. Shumpert was not performing the essential requirements of her position. Shumpert does not present an

---

[3] Moreover, because Shumpert has not shown that HealthPoint was even aware of any alleged investigation, Shumpert cannot show that the investigation was the reason for her termination.

issue of fact as to the reason why she was terminated. Shumpert's retaliation claim under the FCA must be dismissed.[4]

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendant HealthPoint's Motion for Summary Judgment, docket no. 20, is GRANTED. Defendant HealthPoint's Motion to Strike the Fulton Declaration, docket no. 28, is GRANTED. Plaintiff's claims against Defendant are DISMISSED with prejudice.

(2) The Clerk is directed to send a copy of this Order to all counsel of record, enter judgment consistent with this Order, and to CLOSE this case.

IT IS SO ORDERED.

Dated this 20th day of March, 2020.

Thomas S. Zilly
United States District Judge

---

[4] While the Court need not reach this issue because Shumpert fails to establish a prima facie case of discrimination, HealthPoint also had a legitimate, nonretaliatory, nonpretextual reason for discharging Shumpert under the burden shifting analysis set forth in *McConnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). HealthPoint has presented evidence of Shumpert's job performance that would "permit the conclusion that there was a nondiscriminatory reason" for Shumpert's termination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993).